# UNITED STATES DISTRICT COURT
# DISTRICT OF MAINE

| | |
|---|---|
| FRONTIER COMMUNICATIONS CORPORATION, | ) ) ) ) ) ) ) ) ) |
| Plaintiff, | |
| v. | |
| BARRETT PAVING MATERIALS, INC., *et al.*, | |
| Defendants. | |

Civil Action No. 1:07-cv-00113-GZS

## PLAINTIFF FRONTIER COMMUNICATIONS CORPORATION'S OPPOSING STATEMENT OF MATERIAL FACTS

Pursuant to Local Rules 7 and 56(c), Plaintiff Frontier Communications Corporation ("Frontier") respectfully submits this Opposing Statement of Material Facts in response and opposition to Defendant CenterPoint Energy Resources Corp. ("CenterPoint")'s Motion for Summary Judgment and Statement of Material Facts.

## OPPOSING STATEMENT

1. Admitted.

2. Admitted.

3. Admitted.

4. Admitted.

5. Admitted.

6. Admitted.

7. Admitted.

8. Admitted.

9. Denied. In at least two instances, the annual Maine Public Utility Commission reports cited by CenterPoint do not list a Bangor resident as "General Manager." In the 1930

report, the line for General Manager is blank. BGRG0007351. In the 1932 report, the individual listed as "Vice Pres. & Gen'l Mgr" is said to reside in Lowell, Mass. BGRG0007429.[1]

10. Admitted.

11. Admitted.

12. Admitted.

## ADDITIONAL FACTS

1. American Gas & Power Company ("AG&P") owned all of the shares of Bangor Gas Light Company ("BGLC") (other than director's qualifying shares) from approximately May 1928 through approximately September 1944. Exhibit 1, Annual Report to Stockholders of American Commonwealths Power Corporation (1928) at BG 01402; Exhibit 2, Agreement Between AG&P and Benjamin N. Kane Investment Co. at BG 06173-06183.

2. BGLC changed its name to Bangor Gas Company in 1941.[2] Docket No. 113-2, Defendant CenterPoint Energy Resources Corp.'s Statement of Material Facts ¶ 1.

3. CenterPoint has admitted that AG&P is CenterPoint's predecessor. Docket No. 113, Defendant CenterPoint Energy Resources Corp.'s Motion for Summary Judgment and Incorporated Memorandum of Law at 2.

### A. Facts Material To AG&P's Relationship With PUMC

4. Prior to passage of the Public Utilities Holding Company Act of 1935 ("PUHCA"), AG&P was profiting from its service contracts with its subsidiaries. Exhibit 3, Findings and Opinion of the Securities and Exchange Commission at BG 05274.

---

[1] CenterPoint cites the Annual Reports of BGLC from 1928 through 1944 in support of its assertion in Paragraph 9. These materials are voluminous. CenterPoint included them on a CD-ROM that it submitted to the court in connection with its motion. Rather than re-submitting the same documents, Frontier directs the Court's attention to the materials filed by CenterPoint.

[2] For purposes of this Opposing Statement of Material Facts, Frontier will refer to Bangor Gas Light Company and Bangor Gas Company collectively as "BGLC."

5. According to the SEC, it was "obvious" that AG&P's service arrangements with its subsidiaries violated Section 13(a) of the PUHCA. Ex. 3 at BG 05274.

6. AG&P organized PUMC to take over AG&P's service contracts with its subsidiaries in an attempt to avoid violating Section 13(a) of the PUHCA. Ex. 3 at BG 05274.

7. The capital stock of PUMC was purchased by AG&P's subsidiaries in amounts roughly proportionate to the subsidiaries' gross revenues. Ex. 3 at BG 05274.

8. All of the officers and employees of AG&P were moved onto the payroll of PUMC. Ex. 3 at BG 05274.

9. PUMC's officers and employees occupied the same office space at 60 Wall Street, New York, NY, that they had used when they were officers and employees of AG&P. Ex. 3 at BG 05275.

10. The SEC determined that "the principal function of the Management corporation [*i.e.*, PUMC] executives is to take the place of a holding-company [*i.e.*, AG&P] staff of officials." Ex. 3 at BG 05275.

11. The SEC ordered the termination of all service contracts between PUMC and AG&P's subsidiaries to prevent the subsidiaries from paying "for services rendered directly or indirectly by the holding company," *i.e.*, AG&P. Ex. 3 at BG 05273, 05276.

B. **Facts Material To Direct Operator Liability**

12. The Maine Public Utility Commission ("MPUC") stated that AG&P "took over the operation" of the Bangor Gas Works "property" when it "acquired ownership of the [BGLC] stock" in 1928. Exhibit 4, Preliminary Report of October 4, 1940 at BGRG0000517.

13. MPUC records show that between 1928 and 1931, right after AG&P "took over the operation" of the property, "extensive additions and improvements were made at the gas plant, to the extent that the major portion of the MGP was rebuilt." Ex. 4 at BGRG0000517.

14. In or about 1936, AG&P installed or contracted to install a five-foot diameter water gas set, with auxiliaries, at the Bangor Gas Works plant. Exhibit 5, Official Report of Proceedings Before the Securities and Exchange Commission (Dec. 8, 1942) at BG 05520-05522.

15. In or about 1939, AG&P installed or contracted to install a six-foot diameter water gas set at the Bangor Gas Works plant. Ex. 5 at BG 05520-05522.

16. In or about 1942, AG&P installed or contracted to install a second-hand purifier at the Bangor Gas Works plant. Ex. 5 at BG 05520-05522.

17. Before 1935, AG&P "operated the properties, or rather, managed the properties" owned by AG&P. Exhibit 6, Official Report of Proceedings Before the Securities and Exchange Commission (July 19, 1938) at F002654, F002657.

18. PUMC's "function" with respect to AG&P's subsidiaries included, among other things, "financial, operating, and all of its details; manufacturing, distribution, utilization of gas . . . and rendering continuous advice and service on detailed questions of accounting and planning, and supervision in laying out of construction programs." Ex. 6 at F002659-2660.

19. PUMC "initiate[d] ideas and projects" for AG&P's subsidiaries "[c]ontinuously," and that PUMC's "daily duty" was to "check the operations of the [subsidiary] company with a view to effecting operating economies." Ex. 6 at F002661.

20. Discussing "the services of Public Utility Management Corporation," AG&P's President testified before the SEC that "a good syndicated operation or central operation is far superior to local operation." Ex. 6 at F002701.

21. PUMC's Assistant Secretary and Director of Operations testified before the SEC concerning "services" that he "as a member of the P.U.M.C. organization rendered personally." Ex. 5 at BG 05489.

22. The "particular department" PUMC's Assistant Secretary and Director of Operations "was engineering, construction and similar service to the subsidiary companies," as well as "operation of the properties." Ex. 5 at BG 05489.

23. The "duties" of PUMC's President, Secretary/Treasurer, and their staff, were "almost exclusively central management activities." Ex. 3 at BG 05275.

24. The officers in charge of PUMC's Operation Department and Procurement Department, "while participating actively" in the "control functions" performed by PUMC's President and Secretary/Treasurer, also "perform[ed] some services that relate directly to the operations of the subsidiary companies . . . ." Ex. 3 at BG 05276.

25. "Before passage of the Holding Company Act [in 1935], all the subsidiary companies of [AG&P] had contracts with the holding company, providing for accounting, engineering, purchasing, new business, advertising, inspection, corporation records, treasury, and financial services . . . ." Ex. 3 at BG 05274.

26. AG&P entered into a Management Contract with BGLC in or about 1930, pursuant to which BGLC paid a percentage of its operating revenues to AG&P for the latter's management services. Exhibit 7, AG&P Board Meeting Minutes at BG 03155; Ex. 7 at BG 03161-03165 (Management Contract).

27. AG&P's Management Contract provided that AG&P would "manage the plants and properties of the [subsidiary] Company." Ex. 7 at BG 03162.

28. AG&P's Management Contract further provided that the "services" of AG&P's "departments . . . will be furnished" to the subsidiary, including the services of the following AG&P departments: "[a]ccounting, purchasing, new business, advertising, technical, inspection, corporation records, treasury and financial service." Ex. 7 at BG 03162.

29. AG&P's Management Contract described in detail the services that would be provided to AG&P subsidiaries by each of AG&P's "departments." Ex. 7 at BG 03161-03165.

30. AG&P entered into an Engineering Contract with BGLC in or about 1930, pursuant to which BGLC paid AG&P for the latter's engineering work. Ex. 7 at BG 03155; Ex. 7 at BG 03156-03160 (Engineering Contract).

31. AG&P's Engineering Contract provided that AG&P would "act as consulting, designing and supervising engineers in all engineering work," and that AG&P would also "supervise the construction of such work." Ex. 7 at BG 03157.

32. AG&P's Engineering Contract further provided that AG&P's designing and supervising engineering work would include "[t]he design and supervision of the construction and substantial additions, extensions or alterations to," among other things, "[g]as generating plants, by-product plants, equipment, storage holders, and distribution systems." Ex. 7 at BG 03157-03158.

33. PUMC entered into a Service Contract with BGLC in or about 1938, pursuant to which BGLC paid PUMC for the latter's services. Exhibit 8, Agreement between PUMC and BGLC at BGRG0004722; Ex. 8 at BGRG0004723-0004728 (Service Contract).

34. PUMC's Service Contract provided that PUMC would "furnish" AG&P's subsidiaries with various "services," including "[a]ccounting, engineering, purchasing, new

business, advertising, technical, inspection, corporation records, treasury, and financial." Ex. 8 at BGRG0004723.

36. PUMC's Service Contract described in detail the "services" that PUMC would furnish to AG&P's subsidiaries. Ex. 8 at BGRG0004723-0004728.

36. PUMC's Service Contract provided specifically that PUMC's engineering service would "cover[] consulting, designing and supervisory engineering service," and that such service included, among other things, "designing and supervision of the construction of substantial additions, extension or alterations to gas generating plants, by-product plants, equipment, storage holders and distribution systems . . . ." Ex. 8 at BGRG00004724.

    **C.**    **Facts Material to Indirect Liability**

37. Throughout AG&P's ownership of BGLC, a majority of BGLC's officers were also officers of AG&P. BGRG0005947-6076; BGRG00007270-7819.[3]

38. Throughout AG&P's ownership of BGLC, a majority of BGLC's directors were also directors of AG&P. BGRG0005947-6076; BGRG00007270-7819.

39. AG&P's officers and directors were not paid by BGLC for their service as officers and directors of that corporation. BGRG0007310, BGRG0007351, BGRG0007390, BGRG0007429, BGRG0007467, BGRG0007505, BGRG0007543, BGRG0007580, BGRG0007617, BGRG0007654, BGRG0007700, BGRG0007743, BGRG0007782, BGRG0005951, BGRG0005993, BGRG0006039.

40. Most of AG&P's officers and directors who were also officers and directors of BGLC resided in New York, NY, not in Bangor. BGRG0007310, BGRG0007351,

---

[3] Paragraphs 37-40 cite the Annual Reports of BGLC from 1928 through 1944. These materials are voluminous. CenterPoint included them on a CD-ROM that it submitted to the court in connection with its motion. Rather than re-submitting the same documents, Frontier directs the Court's attention to the materials filed by CenterPoint.

BGRG0007390, BGRG0007429, BGRG0007467, BGRG0007505, BGRG0007543, BGRG0007580, BGRG0007617, BGRG0007654, BGRG0007700, BGRG0007743, BGRG0007782, BGRG0005951, BGRG0005993, BGRG0006039.

41. In 1930 and 1931, AG&P caused certain of its subsidiaries to supply funds to AG&P and AG&P's parent company by transfers of funds from the subsidiaries' bank accounts, loans, service contracts, payment of dividends out of capital and sales of stock in AG&P's parent company, among other ways. Ex. 3 at BG 05281.

42. PUMC officers wrote letters conducting BGLC business on PUMC letterhead and on letterhead bearing the address "60 Wall Street, New York, NY." Exhibit 9, Letter from BGLC on PUMC letterhead to Maine Public Utilities Commission (Aug. 13, 1941), BGRG00004884; Exhibit 10, Letter from PUMC on PUMC letterhead to Maine Public Utilities Commission (Aug. 20, 1941), BGRG00004898.

43. A report prepared for the MPUC in or about October 1940 concluded that BGLC's accounting books for the second half of 1928, all of 1929 and all of 1930 were missing. The availability of "supporting details" for the accounting books for 1931, 1932, 1933 and 1934 remained "a question." Ex. 4 at BGRG0000519; Ex. 4 at BGRG0000553-555.

44. The October 1940 report also concluded that BGLC's "Plant Investment account" had been overstated by "not less than $350,000." Ex. 4 at BGRG0000536.

45. Under PUMC's management, "[e]verything of an accounting nature, outside the day-to-day routine operations of the local company, [was] handled by the Management Company," *i.e.*, PUMC. Exhibit 11, Official Report of Proceedings Before the Securities and Exchange Commission (Dec. 10, 1942) at BG 05764.

46. PUMC placed an "expenditure limit" on AG&P's properties, including a limit of $50 for BGLC. Expenditures above that limit required "consultation" with PUMC. BG 05492.

47. In 1943, the SEC concluded that "[t]he debt in the superstructure" of AG&P was "exert[ing] considerable pressure on the holding company's management to draw up from its subsidiary companies maximum cash payments." Ex. 3 at BG 05266.

48. The documents produced to date do not contain any minutes from meetings of the BGLC board of directors.

Dated: May 18, 2009 /s/ Martha C. Gaythwaite

                Martha C. Gaythwaite
                FRIEDMAN GAYTHWAITE WOLF & LEAVITT
                Six City Center
                P.O. Box 4726
                Portland, ME 04112-4726
                (207) 761-0900

Of Counsel:

John S. Hahn
Jay C. Johnson
MAYER BROWN LLP
1909 K Street, NW
Washington, DC 20006-1101
(202) 263-3000

# CERTIFICATE OF SERVICE

The undersigned hereby certifies that on the date shown below, copies of the following document(s):

**PLAINTIFF FRONTIER COMMUNICATIONS CORPORATION'S
OPPOSING STATEMENT OF MATERIAL FACTS**

was electronically filed with the Clerk of Court using the CM/ECF system which will send notification of such filing(s) to the attorney/parties of record who have registered as CM/ECF participants.

Dated: May 18, 2009

                                                Respectfully submitted,

                                                /s/ Martha C. Gaythwaite
                                                Martha C. Gaythwaite
                                                FRIEDMAN GAYTHWAITE WOLF & LEAVITT
                                                Six City Center
                                                P.O. Box 4726
                                                Portland, ME 04112-4726
                                                (207) 761-0900

Of Counsel:

John S. Hahn
Jay C. Johnson
MAYER BROWN LLP
1909 K Street, NW
Washington, DC 20006-1101
(202) 263-3000