UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| FRONTIER COMMUNICATIONS CORPORATION, | ) ) ) |
| Plaintiff, | ) ) ) Docket no. 1:07-cv-113-GZS |
| v. | ) ) |
| BARRETT PAVING MATERIALS, INC., ET AL., | ) ) ) |
| Defendants. | |

**ORDER ON MOTION TO DISMISS**

Before the Court is Defendants Guilford Transportation Industries, Inc. and Maine Central Railroad Company's Motion to Dismiss (Docket # 108). For the reasons explained herein, the Court DENIES the Motion.

**I.    STANDARD OF REVIEW**

Pursuant to Rule 12(b)(6), a party is entitled to have a claim against it dismissed when the allegations on which the claim depends "fail[ ] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). When considering any motion under Rule 12(b)(6), the Court accepts as true the well-pleaded factual allegations of the complaint and draws all reasonable inferences in the plaintiff's favor. Ultimately, the Court must determine whether the complaint, when taken in the light most favorable to the plaintiff, sets forth sufficient facts to support the claim for relief. Clorox Co. v. Proctor & Gamble Commercial Co., 228 F.3d 24, 30 (1st Cir. 2000); LaChapelle v. Berkshire Life Ins. Co., 142 F.3d 507, 508 (1st Cir. 1998). Pursuant to Rule 8(a), the pleader need only make "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Despite the liberal pleading standard of Rule 8, to survive a motion to dismiss, a complaint must allege "a plausible

1

entitlement to relief." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, ----, 127 S. Ct. 1955, 1967 (2007). This "plausibility standard" requires "more than a sheer possibility that a defendant has acted unlawfully." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (discussing Twombly). Thus, to survive a motion to dismiss, the complaint must contain "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.

## II.  BACKGROUND

As alleged in the Complaint, Plaintiff Frontier Communications Corporation ("Frontier") seeks "contribution, indemnity and recovery for costs incurred in connection with the environmental cleanup [of certain tar and poly-aromatic hydrocarbon ("PAH") contamination] in the portion of the Penobscot River known as Dunnett's Cove." (Compl. (Docket # 1) ¶ 13.) As to Defendants Guilford Transportation Industries, Inc. ("Guilford") and Maine Central Railroad Company ("MEC") (together, "Railroad" or the "Railroad Defendants"), Frontier's Complaint presses claims under the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), 42 U.S.C. § 9601 et seq., (Counts I-III) and various common law claims (Counts IV-VI).

MEC began operating in Bangor, Maine around 1862. Specifically, it operated a rail yard, which occupied approximately 30 acres, along the banks of Dunnett's Cove. Guilford purchased MEC in 1981 and took over its operations. (See Compl. ¶¶ 77 & 78.) The Complaint contains the following additional well-pled allegations regarding the Dunnett's Cove rail yard (the "Rail Yard") and the Railroad's operation of the yard:

> The Rail Yard served as a point of departure and as a station for loading and unloading cargo including wood and paper pulp, coal, oil and tar for countless trains over the years. For a number of years, the operators of the Rail Yard used the banks of Dunnett's Cove to store large amounts of coal. Two large tar storage tanks located at the Rail Yard existed at

various locations on that property over the years, including locations close to the banks of Dunnett's Cove. During operation of the Rail Yard by MEC, a number of spills of PAH-containing materials occurred there, and contaminants from some or all of those spills reached Dunnett's Cove. A 1984 report on a spill at the Rail Yard described "negligence, apathy and inappropriate testing of equipment," as well as a prevalence of "archaic attitudes" toward environmental pollution. The soil at the Rail Yard was contaminated with tar and other materials containing PAHs. That contaminated soil has recently been covered to prevent human exposure. Significant fires occurred at the Rail Yard on several occasions during its history, including fires at the coal storage near the river; such fires substantially increased the amount of PAHs in the area. At least until the 1960s, sewers in the Rail Yard drained, directly and without treatment, into the Penobscot River. On information and belief, during the more than 100 years that the Rail Yard operated as a terminal for MEC, numerous spills of tar and other PAH-containing materials occurred—either accidentally or through the negligence, apathy and inappropriate testing of equipment described in the 1984 report—and drained into Dunnett's Cove through sewers, groundwater and/or by overland flow.

(Compl. ¶¶ 69-71.)

### III. DISCUSSION

The Railroad Defendants press three separate arguments in the pending Motion to Dismiss, each of which relates to the different types of claims found in Frontier's Complaint. The Court addresses each argument in turn.

### A. The CERCLA Claims (Counts I-III)

As to Counts I-III, the Railroad asserts that the Complaint does not and cannot allege all of the necessary elements of CERCLA liability; specifically, the Railroad Defendants believe the Complaint fails to adequately allege on what basis the Court might find them to be potentially responsible parties ("PRPs").[1] In responding to the Motion, Frontier asserts that its Complaint contains factual allegations sufficient to meet the plausibility standard for finding the Railroad to be a PRP under two specific CERCLA subsections: (1) 42 U.S.C. § 9607(a)(2), which applies to owners or operators who owned or operated a facility "at the time of disposal of any hazardous

---

[1] See, e.g., Cooper Indus., Inc. v. Aviall Services, Inc., 543 U.S. 157, 162 (2004) (explaining and discussing the four classes of PRPs laid out in CERCLA).

3

substance" and/or (2) 42 U.S.C. § 9607(a)(3), which applies to persons who arranged for the transport of hazardous materials to the facility for disposal or treatment.

With respect to the first PRP category, the Railroad's status as a prior owner or operator of the Dunnett's Cove facility is dependent on the boundaries of the facility. To the extent this is a CERCLA contribution action based on the June 27, 2006 Amended Consent Decree (Docket # 755 in Civil Docket # 1:02-cv-183-GZS) (the "Consent Decree"), the boundaries of the Dunnett's Cove facility arguably depend on the language of the Consent Decree. The Consent Decree, in turn, defines the Dunnett's Cove "Site" by reference to the Court's June 27, 2006 Findings of Fact (Docket # 658 in Docket # 1:02-cv-183-GZS) and the March 3, 2004 Site Designation by MDEP. (See Consent Decree at 9.) The Dunnett's Cove facility, as defined in these documents, includes intertidal lands. The Railroad asserts that it never owned any of these intertidal lands and, thus, its prior ownership includes only the land abutting the Dunnett's Cove facility. Assuming, without deciding, that the Railroad never *owned* any part of the Dunnett's Cove facility,[2] it could still be a PRP under 42 U.S.C. § 9607(a)(2) if it *operated* in the area of the Dunnett's Cove. The Court believes that the factual allegations of the Complaint suffice to lay out a plausible claim that the Railroad could be a PRP based on its prior operations within the boundaries of the facility.

Moreover, even if the Court were to find that the allegations of the Complaint were not sufficient to establish that the Railroad Defendants are PRPs as owners or operators under 42 U.S.C. § 9607(a)(2), the Complaint can easily be read to make out a plausible claim for finding

---

[2] To the extent that both parties have attempted to draw the Court's attention to documents outside the pleadings in order to definitively answer this question, the Court has disregarded those documents in deciding the pending motion. (See Defs.' Mot. to Dismiss (Docket # 108) at 4-5 (referring to 1996 Deed) and Pl.'s Response (Docket # 115) at 7-8 (citing to an attached photograph and objecting to the Court's review of the 1996 Deed in connection with the Motion to Dismiss).) Given the fact-intensive nature of the question, the Court believes this issue is best reserved for summary judgment and/or trial.

the Railroad to be a PRP under 42 U.S.C. § 9607(a)(3). Specifically, the Complaint contains multiple factual assertions that, if true, could establish that the Railroad arranged for the disposal of tar and other PAH-containing materials into Dunnett's Cove.

In its reply, the Railroad invokes the very recent Supreme Court decision in Burlington Northern & Santa Fe Railway Co. v. United States, 129 S. Ct. 1870 (2009), asserting that this decision "narrowed the scope of arranger liability under 42 U.S.C. § 9607(a)(3)." (Defs.' Reply (Docket # 122) at 2.) In Burlington, the Supreme Court specifically acknowledged that the question of who qualifies as a PRP under 42 U.S.C. § 9607(a)(3) is "fact intensive and case specific." Id. at 1879. In this case, the allegations contained in the Complaint exceed the "mere knowledge that spills and leaks continued to occur" (what the Burlington Court specifically found to be an insufficient basis for arranger liability). Id. at 1880. Rather, in addition to alleging negligent disposal via spills, the Complaint also alleges disposal via sewer lines located on the property. To the extent that the sewer system, which discharged untreated sewage into Dunnett's Cove, was owned and operated by the City of Bangor, the Railroad's disposal of tar or other PAH-containing materials via the sewer would fall well within the confines of arranger liability – even after Burlington.

In short, the Court finds that there are sufficient factual allegations in the Complaint to make out a plausible basis for finding the Railroad to be a PRP under CERCLA.

**B. The Common Law Claims for Contribution and Indemnity (Counts IV & V)**

The Railroad has moved to dismiss Frontier's common law claims for contribution and indemnity on the basis that these claims are subject to conflict preemption in light of the CERCLA claims. The Court does not believe that either the language of CERCLA or the case law support a finding that CERCLA preempts all common law claims against parties, such as the

5

Railroad, that have not entered into a settlement pursuant to 42 U.S.C. § 9613(f). See 42 U.S.C. §§ 9607(e)(2), 9613(f)(1), 9652(d); New York v. Ametek, Inc., 473 F. Supp. 2d 432, 433-34 (S.D.N.Y. 2007).

In its response, Frontier also clarifies that it "is not seeking 'double recovery' against the Railroad" but rather is pressing these common law claims in the alternative. (Pl.'s Response (Docket # 115) at 9.) Frontier is certainly allowed to plead claims in the alternative. See, e.g., Fed. R. Civ. P. 8(d)(2). At this early juncture, the Court need not require Frontier to elect between its asserted CERCLA remedy and these common law claims. In short, the Court finds the Railroad's arguments for dismissing Counts IV and V to be without merit.

## C. The Negligence Claim (Count VI)

Finally, the Railroad argues that Frontier's negligence claim is barred by the statute of limitations. Both sides agree that Maine law requires a claim for negligence be "commenced within 6 years after the cause of action accrues." 14 M.R.S.A. § 752. Plaintiff commenced a negligence claim on behalf of itself in 2003.[3] Thus, the Railroad Defendants would arguably be entitled to dismissal on statute of limitations grounds of this cause of action accrued prior to 1997. In opposing this argument, Frontier asserts that its claim is covered by Maine's common law continuing tort doctrine. As the Law Court has explained, the continuing tort doctrine "may be applied when no single incident in a chain of tortuous activity can 'fairly or realistically be identified as the cause of significant harm.'" McLaughlin v. Superintending Sch. Comm. Of Lincolnville, 832 A.2d 782, 789 n. 6 (Me. 2003) (quoting Fowkes v. Penn R.R. Co., 264 F.2d 397, 399 (3rd Cir. 1959).) "In such cases, the breach of duty is regarded as a single continuing

---

[3] To the extent that Froniter is pursuing a negligence claim on behalf of the City of Bangor as part of its assigned claims, any such assigned negligence claim was not asserted until 2007. (See Exs. A & C to Citizens Communications Co.'s Mot. for Leave to File Supp. Third Pty. Complaints (Docket # 717 in Civil Docket # 1:02-cv-183).)

wrong that terminates when the exposure to the harm terminates." Id. As alleged in the Complaint, the harm to Dunnett's Cove from PAHs at the Rail Yard site readily falls into the category of a "continuing wrong" that has not yet terminated. Id. Thus, the Court cannot conclude that there is a basis for dismissing Plaintiff's negligence claim on statute of limitations grounds.[4]

## IV. CONCLUSION

For these reasons, the Court hereby DENIES Defendants' Motion to Dismiss (Docket # 108).

SO ORDERED.

        /s/ George Z. Singal
        United States District Judge

Dated this 7th day of July, 2009.

---

[4] In its Reply, Defendants assert the Railroad owed no duty to Frontier. (See Defs.' Reply (Docket # 122 at 6-7.) The Court declines to address this argument, which is improperly raised for the first time in Defendants' Reply and goes well beyond the statute of limitations argument raised in the Motion to Dismiss. Defendants' submission also raises issues with respect to Defendants' duty for any negligent migration of PAH-containing materials occurring in the years since Defendants ceased operations and sold the Rail Yard to the City. (See Defs.' Mot. to Dismiss at 10 n. 3.) While Defendants attempt (via footnote) to put the timeline for these events before the Court, these facts are not in the Complaint or otherwise properly before the Court in connection with this Motion. (See id.) Thus, the Court will also await appropriate briefing before addressing the merits of this particular argument.