UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| FRONTIER COMMUNICATIONS CORPORATION, | )<br>)<br>) |
| Plaintiff, | )<br>) |
| v. | )   Civ. No. 07-cv-113-B-GZS<br>) |
| BARRETT PAVING MATERIALS, INC., *et al.*, | )<br>)<br>) |
| Defendants. | )<br>) |

RECOMMENDED DECISION ON
MOTION FOR PARTIAL SUMMARY JUDGMENT
AND MOTION FOR DISCOVERY

Plaintiff Frontier Communications Corporation requests an entry of partial summary judgment (Doc. No. 110) declaring that a December 2003 letter agreement between the City of Bangor, as indemnitor, and Defendants Maine Central Railroad Company and Guilford Transportations Industries, as indemintees, is unenforceable and invalid and cannot be relied upon to frustrate Frontier's effort to obtain a CERCLA contribution remedy from the Railroad Defendants.  Specifically, Frontier asks the Court to enter judgment in its favor as to the Railroad Defendants' Fifteenth Affirmative Defense that "Frontier's claims, including claims purportedly assigned by the City, are barred, in whole or in part, by the indemnification agreement between the City and the Railroad."  (Reply Mem. at 1, Doc. No. 123;  R.R. Def. Ans. at 13, Doc. No. 144.)  Subsequent to the briefing cycle on the summary judgment motion, the Railroad Defendants filed a motion for discovery, seeking leave to discover facts allegedly material to the pending summary judgment motion.  (Doc. No. 139.)  The Court has referred the motion for partial summary judgment and the motion for discovery pursuant to 28 U.S.C. § 636.  Based on

my review of the summary judgment record and the parties' memoranda, I conclude that both the factual record and the legal arguments require further development in order to determine the legal question that Frontier requests judgment on.  Consequently, I recommend that the Court deny the motion for partial summary judgment without prejudice so that it can be revisited in light of a more comprehensive record and more thorough briefings.  I moot rather than grant the motion for discovery in order to avoid prejudging or forecasting the scope of permissible discovery that will follow.

### Procedural Background and Development

The current action is in some respects a continuation of a revised version of Frontier's third-party complaint in the City of Bangor's earlier lawsuit, case number 1:02-CV-183, but the current case is also based in part on claims assigned to Frontier by the City of Bangor pursuant to a Settlement Agreement between the City and Frontier, set forth in the Consent Decree that resolved the City's underlying CERCLA litigation against Frontier.  (Am. Consent Decree at Part V, ¶ 10.D, Case No. 1:02-cv-183-GZS, Doc. No. 755; see also Joint Status Report of City of Bangor and Citizens Communications Co. in Case No. 1:02-183, Doc. No. 693.)[1]  The challenged indemnification agreement is something that grew out of representations made by the City's counsel during the course of the underlying litigation, after Frontier pursued third-party claims against the Railroad Defendants based on the Railroad Defendants' past operations on a parcel that the City purchased from the Railroad Defendants in 1996.  The parcel in question is adjacent to Dunnett's Cove, the site being remediated pursuant to the Consent Decree entered in the prior proceeding.

---

[1] The change in case number does not change this into a new "proceeding" for purposes of the indemnification agreement because Frontier previously waived any such argument.  (See Order Denying Citizens' Mot. for Leave to File Supplemental Third-Party Compls. at 2 n.1, in Case No. 1:02-CV-183-GZS, Doc. No. 771.)

On October 17, 2008, I issued a Report of Telephone Conference and Order concerning the course of proceedings and related scheduling matters in which I invited the parties to file early dispositive motions following the completion of mediation, including motions to dismiss and other dispositive motions that would not require additional formal discovery to resolve. (Report of Tel. Conf. and Order at ¶ 5, Doc. No. 87.)  According to Frontier, the effort to mediate or otherwise settle the action between Frontier and the Railroad Defendants was frustrated by the Railroad Defendants' position that the City's promise to indemnify the Railroad Defendants effectively negated Frontier's claims against the Railroad Defendants because Frontier and the City have now resolved all claims between them, leaving Frontier without any recourse against the City.[2]  Frontier has filed a motion for partial summary judgment hoping to remove the indemnification agreement from the picture for this reason.

More recently, on August 6, 2009, the Railroad Defendants filed a third-party complaint (Doc. No. 147) in this proceeding against the City of Bangor, City Solicitor Norman Heitmann, and City Manager Edward Barrett, based on the circumstances pertaining to the alleged indemnification agreement described in the following summary judgment factual statement.

## Undisputed Facts

The following factual statement is drawn from the parties' competing statements of material facts, filed in accordance with Local Rule 56, and from the record cited in support of those statements.  See Doe v. Solvay Pharms., Inc., 350 F. Supp. 2d 257, 259-60 (D. Me. 2004) (outlining the mandatory procedure for establishing factual predicates needed to support or

---

[2]    The key to the practical importance of Frontier's partial summary judgment motion is found in Attorney Devoe's October 1, 2007, letter to the Railroad's counsel (Doc. No. 118-14), wherein he asserts his belief that if the City has to indemnify the Railroad, Frontier, in turn, will have to indemnify the City pursuant to paragraph 3(e) of the Settlement Agreement between Citizens and the City.

overcome a summary judgment motion); Toomey v. Unum Life Ins. Co., 324 F. Supp. 2d 220, 221 n.1 (D. Me. 2004) (explaining "the spirit and purpose" of Local Rule 56).

      The pending motion concerns a representation found in a December 30, 2003, letter authored by Attorney William B. Devoe, then outside counsel for the City of Bangor, and sent to Attorney Frederick J. Badger, Jr., outside counsel for Maine Central Railroad and Guilford Transportation. (Doc. No. 111-2.) Attorney Martha C. Gaythwaite, counsel for Frontier, received a copy of this letter from Attorney Devoe on August 12, 2005. (Id.) In his December 30, 2003, letter, Attorney Devoe writes to "memorialize the agreement between the City of Bangor . . . and Guilford Transportation, Inc. and Maine Central Railroad Company . . . regarding indemnification and cost-sharing in the context of the above-referenced litigation." (Id. at 2 of 3.) Attorney Devoe relates: "The City has agreed to indemnify the Railroad for any recovery, by way of settlement or judgment, made by Citizens Communications Co. [Frontier] in the context of its third party complaint against the Railroad in this proceeding . . . ." (Id.; Pl.'s Statement of Material Fact (PSMF) ¶ 1, Doc. No. 111.) Although the City and the Railroad Defendants were both parties to the action, the City did not have any claim against the Railroad Defendants. Nor had the Railroad Defendants asserted any claim against the City in connection with Frontier's third-party action.

      With its motion, Frontier maintains that the Bangor City Council never observed the proper procedures to enter into the indemnification agreement or to ratify the agreement subsequent to its purported execution. Frontier cites deposition testimony offered by the Bangor City Solicitor, Norm Heitmann, in which Mr. Heitmann stated that it would be correct to say that "there was not an order dealing with that – that letter." (Doc. No. 111-3.) According to Frontier, there is no available record of any city council action authorizing or ratifying the December 30,

2003, indemnification agreement. The Railroad Defendants do not identify in their opposing statement any evidence that the City Council ever publicly voted to enter into the agreement and therefore it is fair to conclude that it did not.[3] Instead, they cite their counsel's affidavit testimony to the effect that they were involved in discussions in November and December of 2003 and that they were advised that Attorney Devoe and City Solicitor Heitmann would present the agreement to the City Council in executive session on December 8, 2003, and recommend that it be adopted. (Def.'s Additional Statement ¶¶ 10-14, Doc. No. 118.) The Railroad Defendants relied on the representations made by Attorney Devoe in his subsequent letter of December 30, 2003, but there is no evidence that the City Council ever emerged from executive session to enter into the contract in public session or ever addressed the matter publicly in a later public session.

According to Attorney Badger, he was informed by Attorney Andrew Hamilton, counsel for the City, "that the agreement would likely be in letter form to preserve its confidentiality." (Atty. Badger Aff. ¶ 6, Doc. No. 118-5.)

The litigation proceeded apace and years passed. In 2007, in connection with developments related to the Consent Decree that terminated the prior litigation, additional correspondence occurred between the Railroad's counsel and the City's counsel concerning the purported indemnification agreement. In the course of that correspondence, Attorney Devoe referred to the indemnification agreement as "the Indemnification Agreement of January 5, 2004," which is the date on which Attorney Badger signed the December 30 letter below a "Seen and Agreed to" recital, in his capacity as counsel for Guilford Transportation, Inc. & Maine

---

[3] If there were simply a Rule 56(f) motion to conduct discovery as to whether a public vote ever took place, the Railroad would not be entitled to a delay in ruling upon the summary judgment motion for that purpose. Clearly if such a public vote existed, the Railroad has had ample opportunity to unearth it during the last six years.

Central Railroad Co.  (Doc. No. 111-2 at 3 of 3.)  Attorney Devoe also represented "that the Consent Decree will not be used to negate or diminish the indemnity agreements reached between the City and Maine Central/Guilford."  (Def.'s Additional Statement ¶¶ 16-17;  June 6, 2007, Letter from Attorney Costlow to Attorney Devoe, Doc. No. 118-9;  July 11, 2007, Letter from Attorney Devoe to Attorney Costlow, Doc. No. 118-10.)  Subsequently, Attorney Devoe stated in a letter dated October 1, 2007, that "the City will not back away from its commitment to the railroad as more fully described in the indemnification agreement dated January 5, 2004." (Doc. No. 118-14;  Def.'s Additional Statement ¶ 19.)  In fact, the City of Bangor has paid $75,000.00 of the Railroad Defendants' attorney fees, presumably in accordance with the terms of the Indemnification Agreement.  (Def.'s Additional Statement ¶ 14;  Atty. Badger Aff. ¶ 8.) The manner by which those funds were transferred is not described in the parties' statements of fact or in the supporting Affidavit of Attorney Frederick J. Badger, Jr., counsel for the Railroad Defendants.

   Beyond these evidentiary items, the Railroad Defendants introduce the Release Deed executed by Maine Central Railroad and the City of Bangor in 1996 to convey property abutting Dunnett's Cove from Maine Central to the City.  (Def.'s Additional Statement ¶¶ 5-7;  Release Deed, Doc. No. 118-2.)  The deed includes language waiving the grantee's right to assert claims or causes of action against the grantor in regard to suits or environmental enforcement actions on account of "any release of oil or hazardous materials or substances of any description on, upon or into the Premises" and "all damage to real or personal property, natural resources and/or harm or injury to persons alleged to have resulted from such release of oil or hazardous materials or substances."  (Doc. No. 118-2 ¶ 6.)  It appears that this waiver language is offered in order to

explain the background for why the City and the Railroad were engaged in discussions over an indemnification agreement.

## Discussion

Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A fact is material if its resolution would "affect the outcome of the suit under the governing law," and the dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). When reviewing the record for a genuine issue of material fact, the Court must view the summary judgment facts in the light most favorable to the nonmoving party and credit all favorable inferences that might reasonably be drawn from the facts without resort to speculation. P. R. Elec. Power Auth. v. Action Refund, 515 F.3d 57, 62 (1st Cir. 2008). If such facts and inferences could support a favorable verdict for the nonmoving party, then there is a trial-worthy controversy and summary judgment must be denied. Azimi v. Jordan's Meats, Inc., 456 F.3d 228, 241 (1st Cir. 2006).

The objective of Frontier's motion for partial summary judgment is to obtain a ruling to the effect that there is no binding indemnification agreement between the City and the Railroad Defendants because the Railroad Defendants cannot demonstrate that the Bangor City Council ever authorized Attorney Devoe to enter into such an agreement on behalf of the City, or ever voted to ratify the agreement after it was seen and agreed to by counsel for the Railroad Defendants. (Mot. for Partial Summary J. at 2, Doc. No. 110.) I pause to address an ancillary issue before turning to the issue of the legality of the indemnification agreement.

7

**A.      The 1996 Release Deed and Purchase Agreement are Beside the Point.**

In opposition to the motion, the Railroad Defendants argue that the waiver language in the 1996 release deed prevented the City of Bangor from assigning any claim against the Railroad to Frontier in the context of the Consent Decree because no such claim exists. (Opposition Mem. at 1-2, Doc. No. 117; Atty. Badger Aff. ¶ 9, Doc. No. 118-5.)  The pending motion does not require any ruling related to the significance of the 1996 deed because the motion targets the letter indemnification agreement, exclusively.  I understand that the Railroad offers statements about the 1996 deed simply to give background for why, when Citizens (now Frontier) asserted third-party claims against the Railroad in the City's action against Frontier, the City and the Railroad had a discussion about whether there would be any indemnification extended by the City to the Railroad in the context of the third-party claims, and to explain why those discussions recommenced in 2007 when the matter of the Consent Decree was before the Court.  It is not clearly explained why the City's waiver of claims in the 1996 deed should have become an indemnification agreement in relation to third-party claims or releases of hazardous substances into or onto Dunnett's Cove, but that is not the issue currently before the Court.

According to Frontier, "it appears that the Eaton Peabody [Devoe] letter may have been simply the product of a misreading of the 1996 purchase agreement." (Mot. for Partial Summary J. at 4.)  The language of the purchase agreement did not make its way into the parties' statements of fact, but Frontier attached a copy of the document to its summary judgment motion. (Statement of Material Facts ¶ 3; Real Estate Purchase Option Agreement, Doc. No. 111-4.)  That agreement contains an indemnification provision in paragraph five, but the provision does not extend to hazardous waste.  Instead, it references a subsequent waiver provision in which the City waives and renounces any claims against the Railroad associated

with releases "on, upon or into the Premises." (Doc. No. 111-4 ¶¶ 5, 17.) In the Railroad's view, the significance of the 1996 documents is as follows:

> To the extent that Frontier asserts that it has been assigned the responsibilities and obligations of the City, then logically Frontier would also be responsible for any and all alleged liability of the Railroad with respect to the Site and the cost of defending the Railroad from Frontier's claims, including attorneys fees.

(Opposition Mem. at 3; see also id. at 7 ("Because the City has no viable claim against [the] Railroad, it follows that Frontier, as a purported assignee of the City's rights, can have no claim against the Railroad . . . .").) Like the language of the 1996 Release Deed, the language of the Real Estate Purchase Option Agreement is not the subject of the instant motion for partial summary judgment. The only legal issue put before the Court at this time is whether the Devoe letter, seen and agreed to by the Railroad Defendants, can constitute a valid, binding contract.[4]

**B.      The Summary Judgment Issue Deserves More Thorough Treatment.**

Turning to the instant summary judgment dispute, Frontier acknowledges that the Bangor City Council had, and has, the authority to enter into an indemnification agreement "like the one purportedly entered with the Railroad in December 2003,"[5] but Frontier maintains that the record must divulge whatever affirmative act the City Council took to authorize Attorney Devoe to enter into a contract on its behalf or to ratify the agreement that he purported to enter on the City's behalf. (Id. at 3-4.) Frontier maintains that the City of Bangor Charter, at article II,

---

[4]      The Court made findings on this issue following trial in the preceding litigation, stating that an indemnification agreement was entered into, but the issue presently before the Court was not being pressed at that time. (See Findings of Fact & Conclusions of Law ¶¶ 227, 238-239, Case No. 1:02-cv-183-GZS, Doc. No. 658.) Those findings of fact were ultimately superseded by the Settlement Agreement and the Consent Decree. (See Order Denying Citizens' Mot. for Leave to File Supplemental Third-Party Compls. at 2, 1:02-CV-183, Doc. No. 771.) However, the findings provide background and illuminate the genesis of the indemnification agreement. Whether they ultimately take on any legal significance in the context of this case remains to be seen.

[5]      It is somewhat curious to think that a local government body would purport to indemnify a third-party in connection with CERCLA liability falling within the state or federal government's supervisory authority. The advantage that arises from this course of action is not obvious.

9

sections 1 and 8, provides that the power to make contracts is vested in the City Council and that this power may only be exercised by ordinance, order or resolve. (Doc. No. 118-4.) This Charter language did not work its way into the summary judgment record, but the Railroad has not disputed that the Charter says what it says. In its reply brief (Doc. No. 123) and at oral argument, Frontier argued more emphatically that no action of the Bangor City Council could suffice in this regard unless there was a public vote concerning an appropriate order or resolve on the record. On this point, article II, section 8 of the Charter states that the Council's meetings shall be open to the public, that the Council shall keep a record of its proceedings, that "[n]o ordinance and no appropriation resolve shall be passed until it has been read . . . except when the requirement of a reading . . . has been dispensed with by a two-thirds vote of the members of the City Council," and that "[t]he yeas and nays shall be taken on the passage of any order or resolve when called for by any member of the City Council." The requirement of public action is seemingly assumed in this language, but it is not clearly stated.

    At oral argument Frontier also raised the Freedom of Access provisions of the Public Records and Proceedings Chapter of Title 1, 1 M.R.S. §§ 401, 405. I believe that the real legal controversy concerns these provisions more than the language of the Bangor City Charter. However, the parties have not adequately briefed this issue.

    The provisions of the Maine Freedom of Access Act (FOAA) make explicit what appears to be implicit in the Bangor City Charter:

> § 401. Declaration of public policy; rules of construction
>
> The Legislature finds and declares that public proceedings exist to aid in the conduct of the people's business. It is the intent of the Legislature that their actions be taken openly and that the records of their actions be open to public inspection and their deliberations be conducted openly. It is further the intent of the Legislature that clandestine meetings, conferences or meetings held on private

>property without proper notice and ample opportunity for attendance by the public not be used to defeat the purposes of this subchapter.
>
>This subchapter shall be liberally construed and applied to promote its underlying purposes and policies as contained in the declaration of legislative intent.

Id. § 401. Section 405 of the FOAA pertains to executive sessions. It provides that executive sessions "shall not be used to defeat the purposes of this subchapter as stated in section 401." Id. § 405(1). Although the FOAA does permit the use of executive session to conduct deliberations with attorneys concerning the public body's legal rights and duties, it flatly prohibits final action during executive session: "No ordinances, orders, rules, resolutions, regulations, contracts, appointments or other official actions shall be finally approved at executive sessions." Id. § 405(2). These provisions extend to the "transactions of any functions affecting any or all citizens of the State by," among other public bodies, "any board, commission, agency or authority of any . . . municipality." Id. § 402(2)(C). The remedy prescribed by the FOAA for unauthorized actions is as follows:

>2. ACTIONS. If any body or agency approves any ordinances, orders, rules, resolutions, regulations, contracts, appointments or other official action in an executive session, this action is illegal and the officials responsible are subject to the penalties hereinafter provided. Upon learning of any such action, any person may appeal to any Superior Court in the State. If a court, after a trial de novo, determines this action was taken illegally in an executive session, it shall enter an order providing for the action to be null and void. Appeals are privileged in respect to their assignment for trial over all other actions except writs of habeas corpus or actions brought by the State against individuals.

Id. § 409(2). The proceedings condoned in the foregoing provision "shall not be exclusive of any other civil remedy provided by law." Id. § 409(3). In other words, it is not incumbent upon Frontier to commence a proceeding in the Superior Court in order to have the indemnification

11

agreement declared null and void.[6]  Clearly, the FOAA does not favor the Railroad Defendants' position.

The Railroad Defendants otherwise assert that there is a genuine issue concerning estoppel on these facts because the City repeatedly reassured the Railroad Defendants that it would honor the indemnification letter agreement in communications authored by its counsel. (Id. at 9).  Should these arguments prove unhelpful, the Railroad Defendants have filed a motion for discovery asking that they have the opportunity to develop a factual basis for their estoppel defense.  Although it is obviously true that an attorney agent can bind a principal or engage in conduct that would estopp a principal from denying it is bound to one who relies on an attorney's authorized acts, Berman v. Griggs, 145 Me. 258, 263-64, 75 A.2d 365, 367-68 (1950), where municipal contracts are concerned it is also a basic tenet of the law that persons dealing with agents of a municipality do so at their peril and are obliged to ascertain the authority of the agent purporting to make the contract, State v. Franklin, 489 A.2d 525, 528 (Me. 1985).  In this context, where the public is to be bound, the doctrine of estoppel is strongly disfavored.  People Heritage Bank v. Saco, 566 A.2d 745, 746 (Me. 1989) ("The Bank's estoppel and ratification arguments must fail if the City was not authorized to execute the original guaranty."); Rio Piedras v. Serra, Garabis & Co., 65 F.2d 691, 694 (1st Cir. 1932) ("[E]stoppel can never be invoked against the public to create power in an officer who purported to act on behalf of the

---

[6] The Railroad Defendants contend that Frontier does not have standing to collaterally attack a contract entered into between the City and the Railroad Defendants because the contract was not *ultra vires*. (Opposition Mem. at 7-8).  As an illegal act, an executive session contract *is ultra vires*.  Peoples Heritage Bank v. Saco, 566 A.2d 745, 746 (1989).  The FOA permits any person to appeal an illegal action taken in executive session, which likely means that the instant predicament would not be subject to any standing challenge.  Moreover, pursuant to the Consent Decree and Settlement Agreement in the preceding action, Frontier is the successor to the City's rights pursuant to assignment.  And finally, Frontier is seeking judgment against an affirmative defense, so its failure to plead a declaratory judgment claim is not an obstacle to consideration of this legal question, though it may be more appropriate for the question to be answered in the context of a claim between the Railroad Defendants and the City, in the event that the Railroad Defendants' liability is established in this proceeding.

public without authority to do so. Estoppel is rarely allowed against public bodies, and only when the officer, whose conduct is relied on as having created it, had general power to act for the public in the premises, but exceeded his express authority.") Again, the law strongly disfavors the position taken by the Railroad Defendants.

Despite the formidable obstacles faced by the Railroad Defendants, the evidence they have presented at least creates a genuine factual issue whether the City Council resolved, in executive session, to have Attorney Devoe extend an offer to indemnify the Railroad, which offer was meant to be binding on acceptance. At least in theory, Attorney Devoe's conduct pursuant to such an authorization, if coupled with a sufficient, preexisting resolve or order to retain outside counsel to represent the City in litigation, might be enough to bind the City. See, e.g., Dillon v. City of Davenport, 366 N.W.2d 918 (Iowa 1985) (holding that, under the Iowa Open Meetings Act, city was bound to settlement terms negotiated by counsel to the extent of the authority granted to counsel in closed session, even though the city council rejected the settlement when subsequently presented in open session).[7] Whether to recognize a litigation exception to the FOAA is obviously an important issue of state law that impacts the democratic process in Maine at the municipal level and it would be preferable to make a ruling with the benefit of a fuller record concerning the exact nature and extent of the authority the City Council bestowed upon Attorney Devoe in connection with the litigation and the indemnification

---

[7]    See generally McQuillin, The Law of Municipal Corporations §§ 29:18 (power to contract for legal services), 49:34 (representation by counsel), 28:72 & 49:36.10 (estoppel), 49:39 (judgment by consent) (3d ed.). See also cf. Guy Gannett Pub. Co. v. Univ. of Me., 555 A.2d 470 (Me. 1989) (holding that settlement agreement entered into by the University of Maine was not privileged against disclosure under the FOAA with the exception of a sentence containing medical information); Guy Gannett Communications v. Me. Sch. Admin. Dist. No. 6, No. CV-97-84, 1997 Me. Super. Lexis 143 (Me. Sup. Ct., York Cty., Apr. 30, 1997) (refusing to recognize an exception to the FOAA's provisions concerning access to public records where certain litigation settlement records were reposed with school's insurer); Bangor Publ'g Co. v. Univ. of Me. Sys., No. CV-95-223, 1995 Me. Super. Lexis 425, 1995 WL 870104 (Me. Sup. Ct., Penob. Cty., Dec. 4, 1995) (refusing to recognize an exception to the FOAA's provisions concerning access to public records where public entity maintained its only copy of certain settlement records at the office of its legal counsel).

agreement. Additionally, the issue that I have framed in this recommended decision simply has not been sufficiently briefed by the parties. At oral argument, counsel for Frontier seemingly emphasized the FOAA connection, but neither party has provided written material on this issue.

In the absence of some contrary indication from the Court, I do not intend to bifurcate or delay discovery any longer. What was advertised to me as an "early round" of dispositive motions, most likely limited to the Bestfoods issue raised by another of the defendants, has now stretched into almost a year of maneuvering us into this present posture. (See Doc. No. 75.)

## Conclusion

I RECOMMEND that the Court DENY Frontier's Motion for Partial Summary Judgment (Doc. No. 110), without prejudice to its right to renew the motion following the close of discovery. The Railroad Defendants' Motion for Discovery (Doc. No. 139) is MOOTED. Discovery will commence and I do not intend to forecast or approve any particular discovery initiatives at this juncture.

## NOTICE

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. 636(b)(1)(B) for which *de novo* review by the district court is sought, together with a supporting memorandum, and request for oral argument before the district judge, if any is sought, within ten (10) days of being served with a copy thereof. A responsive memorandum and any request for oral argument before the district judge shall be filed within ten (10) days after the filing of the objection.

Failure to file a timely objection shall constitute a waiver of the right to *de novo* review by the district court and to appeal the district court's order.

/s/ Margaret J. Kravchuk
U.S. Magistrate Judge

September 23, 2009