UNITED STATES DISTRICT COURT

DISTRICT OF MAINE

| | |
|---|---|
| FRONTIER COMMUNICATIONS ) <br> CORPORATION f/k/a CITIZENS ) <br> COMMUNICATIONS COMPANY, ) <br>   ) <br>   Plaintiff, ) <br>   v. ) <br>   ) <br> BARRETT PAVING MATERIALS, ) <br> INC., *et al.*, ) <br>   ) <br>   Defendants ) | Civ. No. 1:07-cv-00113-GZS |

**RECOMMENDED DECISION ON PLAINTIFF'S MOTION TO DISMISS
RAILROAD DEFENDANTS' COUNTERCLAIM**

Frontier Communications Company commenced this action on August 3, 2007, seeking contribution, indemnity and recovery for costs associated with environmental remediation in Dunnett's Cove, pursuant to the Comprehensive Environmental Response, Compensation, and Liability Act (CERCLA), 42 U.S.C. §§ 9601 *et seq.* With this action Frontier seeks to impose on the Defendants an equitable share of the liability it assumed for contamination in the Dunnett's Cove area of the Penobscot River.  Frontier's assumption of that liability arose pursuant to a settlement and related Consent Decree that resulted in the termination of antecedent litigation maintained by the City of Bangor against Frontier (Case No. 02-CV-183).  As the present litigation is configured, Frontier seeks to recover from the Defendants a portion of the $7.625 million in liability it assumed in order to conclude the prior litigation. (Compl. ¶¶ 19-22, Doc. No. 1.)  Among the Defendants are PanAm Railways, Inc. (f/k/a Guilford Transportation Industries) and Maine Central Railroad (collectively, "the Railroad").  Not content to be

defendants in Frontier's litigation to recover an equitable share of Frontier's response costs, the Railroad has filed two counterclaims against Frontier seeking contribution and declaratory relief. (Railroad Counterclaim ¶¶ 13, 16, Doc. No. 144.)  Now pending is Frontier's motion to dismiss "the counterclaim"[1] (Doc. No. 154).  The Court referred this motion for report and recommendation pursuant to 28 U.S.C. § 636.  I recommend that the Court grant the motion as to the first counterclaim and grant it in part as to the second.

## Applicable Standard

When deciding a motion to dismiss**,** the court must "accept as true the well-pleaded factual allegations of the complaint, draw all reasonable inferences . . . in the plaintiff's favor, and determine whether the complaint, so read, sets forth facts sufficient to justify recovery on any cognizable theory." TAG/ICIB Servs., Inc. v. Pan Am. Grain Co., Inc., 215 F.3d 172, 175 (1st Cir. 2000).  A motion under Rule 12(b)(6) tests the legal sufficiency of the complaint, whether the claim, as alleged, is sufficient "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).  The plaintiff is not required to prove her allegations in order to overcome the motion. The question is simply whether the factual allegations, taken as true, are enough to "establish a 'claim to relief that is plausible on its face.'" Trans-Spec Truck Serv., Inc. v. Caterpillar Inc., 524 F.3d 315, 320 (1st Cir. 2008) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).

## Material Allegations

The Railroad's counterclaims are both premised on the fact that Frontier is pursuing a claim against the Railroad to recover an equitable share of the liability Frontier assumed in order

---

[1] There are actually two counterclaims.

to resolve its own liability for remediation of the Dunnett's Cove Site.  The Railroad's counterclaim lacks any allegation that the Railroad has incurred independent response costs related to the Dunnett's Cove Site.  The material allegations of the counterclaims are the following:

FIRST COUNTERCLAIM
(Equitable Apportionment / Contribution)

* * * *

13.  *If the Railroad is found liable to Frontier*, as itself or as the purported assignee of the City, under any theory of federal or state law, for all or any portion of the harm caused by or for costs incurred in response to releases of hazardous substances to the area of the Penobscot River covered by Frontier's Complaint, which liability the Railroad expressly denies, then the Railroad is entitled to equitable apportionment and/or allocation of such liability among all other liable parties, including contribution from Frontier for its and the City's shares of such liability, as permitted by principles of common law, equity, or other applicable law (including but not limited to CERCLA §§ 107 and 113, 42 U.S.C. §§ 9607 and 9613, and the Maine common law of contribution).

SECOND COUNTERCLAIM
(Declaratory Judgment)

* * * *

16. The Railroad is entitled to a judgment under § 113(g) of CERCLA, 42 U.S.C. § 9613(g), and also pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201 et seq., declaring that the Railroad is not liable for any costs incurred in response to releases and disposal of hazardous substances to the area of the Penobscot River covered by Frontier's Complaint, or, in the alternative, declaring the parties' respective equitable shares of liability for such costs, such declaration to be binding in any subsequent action or actions to recover response costs or damages.

(Counterclaim ¶¶ 13 & 16.)

To conclude the antecedent litigation the Court entered final judgment on a Consent Decree agreed to by the City of Bangor, Frontier (then Citizens Communications), the Maine Department of Environmental Protection, and the State of Maine.  The Consent Decree pertains

to environmental remediation of tar deposits existing at a "Site" within a portion of the Penobscot River.  The Consent Decree charts out the scope of the prior litigation through definitions prescribed for numerous terms, including: Consent Decree, Existing Contamination, Feasibility Study, Remedial Action, Remedial Action Plan, Remedial Investigation, Response and Oversight Costs, Settling Parties, and Site, none of which need be repeated here.  (Am. Consent Decree, Part III Definitions, Case No. 02-CV-183-B-S, Doc. No. 755.)  Suffice it to say that the parameters of the prior litigation correspond with the boundaries of Dunnett's Cove and the remediation underway there and the instant litigation rests within those parameters without straying beyond them.

Pursuant to the Consent Decree entered in the prior litigation, the State of Maine and the Maine DEP, as Intervenors, agreed that certain obligations undertaken by the City and payments to be made by Frontier "represent full satisfaction of Intervenors' claims with respect to the Site and any other facilities at issue in the Lawsuit . . . from any and all civil or administrative liability related to or arising from the Site or any other facilities at issue in the Lawsuit."  (Id. Part IV, § 6.A & Part V, §§ 10.A, 10.B.)  With the following language, the Intervenors covenanted to release Frontier from liability and not to sue or take administrative action against Frontier upon Frontier's execution of the Consent Decree and payment of settlement funds to the City[2]:

> In consideration of the obligations assumed by the City under the terms of this Decree and the payments to be made by Citizens under the terms of this Decree, and except as specifically provided in this Decree, the Intervenors covenant not to sue or take administrative action against Citizens, and Citizens shall be released from any and all said civil or administrative liability, including, but not limited to, liability under 38 M.R.S.A. §§ 1304(12), 1318-A, 13I9-J, 1361 to 1371, sections

---

[2]   In its complaint Frontier alleges that it has paid $7.625 million toward the cleanup of Dunnett's Cove. (Compl. ¶ 110.)  The Railroad has not admitted this fact, but it also has not contested this fact for purposes of the instant motion.  Remediation of the Site is currently underway.

4

> 106 or 107 of CERCLA, 42 U.S.C. §§ 9606, 9607, §§ 7002 or 7003 of RCRA, 42 U.S.C. §§ 6972, 6973, or other applicable State laws, including common law, for those discharges, releases, and threatened releases of Hazardous Substances, hazardous wastes, and other pollutants and contaminants at or migrating from the Site, including any groundwater or surface water contamination that may be attributable to the Site, whenever such claims may have arisen or arise in the future.  These releases and covenants not to sue apply to Citizens, its parents, subsidiaries, successors and assigns, as well as their respective past, present, and future shareholders, officers, directors, employees, and agents (hereinafter referred to as "Citizens").  These releases and covenants not to sue shall take effect upon Citizens' compliance with Subparagraph 10.A (Payment by Citizens to the City) or when Citizens signs the Decree, whichever is the later date. These covenants extend only to Citizens and do not extend to any other entity.

(Id. Part IV, § 6.B.)  In addition to these protective covenants, the Consent Decree extends "contribution protection" to Frontier and the City with the following provision:

> Upon the Effective Date of this Decree, Citizens and the City are entitled to protection from all contribution actions or claims for the matters addressed in this Decree, such that, to the extent provided by 42 U.S.C. §§ 9613 and 9622 and 38 M.R.S.A. § 348(4), neither the City nor Citizens shall be liable for claims for contribution brought by any party, or for any claims whatsoever brought by any other potentially responsible party.  In addition, Citizens and the City reserve all rights they may have under applicable law to seek contribution under CERCLA Section 113(f)(3), 42 U.S.C. 9613(f)(3), in connection with the Site from any person, firm, corporation or other entity not a party to this Decree including, but not limited to costs of the Remedial Investigation and Feasibility Studies, the Remedial Action, and future Response and Oversight Costs under this Consent Decree and for all or part of the sums reimbursed to the State hereunder. Intervenors further agree to execute documents necessary to complete settlement of claims; and, as permitted by law, to grant protection from all contribution actions or claims related to the Site (including without limitation actions or claims by the State) to appropriate parties at the request of Citizens.

(Id. Part IV, § 9.)

## Discussion

Frontier's motion challenges the Railroad's ability to maintain a contribution counterclaim in this litigation, either under CERCLA or any other identifiable law.  (Mot. to Dismiss at 1-2.) The Railroad gainsays that proposition, but fails to propound a viable legal theory in opposition

5

to the motion. The CERCLA contribution counterclaim is barred by CERCLA § 113(f)(2). Any state common law contribution theory is barred by 38 M.R.S. § 348(4), if not by CERCLA § 113(f)(2) as well. The Railroad's failure to identify a legal claim that circumvents these statutory obstacles calls for dismissal of its first counterclaim. The Railroad's second counterclaim for declaratory relief does not fail to state a claim.

**A.     The Railroad's First Counterclaim Should be Dismissed**

As potentially responsible parties (PRP) that have not incurred their own response costs in relation to the site or facility in question, the Railroad cannot maintain a claim under § 107 of CERCLA as a matter of law. United States v. Atl. Research Corp., 551 U.S. 128, 139 (2007). As the Supreme Court explained in Atlantic Research, the remedial options available under § 107(a) of CERCLA are restricted to parties that have themselves incurred cleanup costs. Id. Consequently, at most the Railroad could maintain a CERCLA claim for contribution under § 113(f). However, a claim of that nature cannot be maintained against Frontier by operation of CERCLA § 113(f)(2), which bars contribution claims against a party that has resolved its liability to the United States or to a state. Id. at 140; 42 U.S.C. § 9613(f)(2). Because the Railroad has not alleged a viable claim under CERCLA § 107(a), there is no "loophole" available to the Railroad to circumvent the bar set up by CERCLA § 113(f)(2). Atl. Research, 551 U.S. at 140.

The Railroad argues that the record does not support application of the contribution bar in this case because the scope of the Consent Decree is unclear, providing only that contribution protection extends to "the matters addressed in this Decree." (Opposition Mem. at 3, Doc. No. 162, quoting Consent Decree Part IV, § 9.) According to the Railroad, the Consent Decree fails to explain or define what matters are addressed in it. (Id.) Additionally, the Railroad argues that

6

the scope of contribution protection is expressly limited to the protection "provided by 42 U.S.C. §§ 9613 and 9622 and 38 M.R.S.A. § 348(4)," which provisions the Railroad maintains are insufficient to bar its contribution counterclaim.  (Id. at 4.)  Frontier observes in reply that the Railroad never attempts to articulate how the contribution counterclaim could possibly concern matters outside the scope of the Dunnett's Cove Site, the obvious matter to which the Consent Decree is addressed.  (Reply Mem. at 1-3, Doc. No. 167.)  The Railroad's arguments are not persuasive.

The Railroad's contribution counterclaim against Frontier is entirely derivative of the action brought by Frontier to recoup response costs related to the Dunnett's Cove Site.  A review of the Consent Decree makes it plain that liability for remediation of that Site is among the "matters addressed" by the Consent Decree.  Nothing could be plainer from a review of the Consent Decree's text.  Because the text is plain, there is no need to expand upon this discussion to consider other "interpretive guides" to what the Court meant with its reference to the "matters addressed" within the Consent Decree.  See United States v. Charter Int'l Oil Co., 83 F.3d 510, 518 (1st Cir. 1996).  Because the contribution protection extended under the Consent Decree obviously extends to the matter of the Dunnett's Cove remediation effort, and because Frontier has resolved its liability to the State of Maine as a consequence of the Consent Decree, CERCLA § 113(f)(2) calls for dismissal of the Railroad's counterclaim against Frontier, at least to the extent of any counterclaim for contribution under CERCLA.

In addition to CERCLA, the Railroad's first counterclaim invokes Maine common law contribution.  According to Frontier, CERCLA's contribution bar is also effective against state common law claims, citing Taylor Farm LLC v. Viacom, Inc., 234 F. Supp. 2d 950, 962 (S.D. Ind. 2002).  (Mot. to Dismiss at 4 n.3.)  In addition to the Taylor Farm case, Frontier also cites a

more explicit basis for dismissing the state common law contribution claim: 38 M.R.S. § 348(4). This state statute avoids any need to belabor the discussion of CERCLA's contribution bar with talk of federal preemption. Maine law provides a contribution bar under the circumstances of this case, given the judicially approved Consent Decree that settled Frontier's liability to the State in regard to the Dunnett's Cove Site. 38 M.R.S. § 348(4). The contribution bar afforded by Maine law explicitly extends to "contribution claims and all other types of claims under state law." Id. Based on this statutory provision the Court should dismiss the common law contribution claim as well.

**B.    The Railroad's Second Counterclaim does not Fail to State a Claim.**

The Railroad's second counterclaim is based on both CERCLA § 113(g) and the federal Declaratory Judgment Act, 28 U.S.C. § 2201. The parties' memoranda do not really discuss this second counterclaim in any detail. For reasons already stated in the preceding section of this discussion, the Railroad does not have a claim for declaratory relief under CERCLA § 113(g). That provision indicates that a declaratory judgment will be entered in certain actions brought under CERCLA § 107, but it does not authorize a declaratory judgment counterclaim concerning contributory liability in a CERCLA action that has already raised the issue of the counterclaimant's contributory liability. 42 U.S.C. § 9613(g)(2). Lacking any statutory basis, this aspect of the second counterclaim should be dismissed. However, the Railroad does not fail to state a claim when it invokes the Declaratory Judgment Act, 28 U.S.C. § 2201. If this claim deserves to be dismissed at all, it would be based on a finding that the request for declaratory relief is a redundancy that can be stricken *sua sponte* pursuant to Rule 12(f) of the Federal Rules of Civil Procedure. See Stickrath v. Globalstar, Inc., No. C07-1941 TEH, 2008 U.S. Dist. Lexis 95127, *7-9, 2008 WL 2050990, *3 (N.D. Cal. May 13, 2008) (discussing the District Court's

discretion to strike declaratory judgment counterclaims under Rule 12(f) and observing that the Declaratory Judgment Act does not actually mandate that the Court grant the requested relief); Ortho-Tain, Inc. v. Rocky Mountain Orthodontics, Inc., No. 05 C 6656, 2006 U.S. Dist. Lexis 93057, *7-9, 2006 WL 3782916, *3 (N.D. Ill. Dec. 20, 2006) (same).  See also Harvey v. Machigonne Benefits Adm'rs, 128 F. Supp. 2d 51, 55 (D. Me. 2001) (mooting declaratory judgment claim in light of prior order that already addressed the merits of the controversy).  Because the Railroad has raised a unique defense to Frontier's action based on an alleged indemnification agreement entered into with the City of Bangor and because it has now filed a third-party complaint against the City and its employees, there may yet turn out to be some actual reason for this counterclaim.  (See Report and Recommended Decision on Frontier's Mot. for Partial Summary J., Doc. No. 165).  For this reason the second counterclaim for declaratory relief is not entirely redundant of Frontier's claim for contribution.  Accordingly, I recommend that the Court not dismiss the Railroad's second counterclaim to the extent of its request for declaratory relief under the Declaratory Judgment Act.

## Conclusion

For the reasons set forth above, I RECOMMEND that the Court GRANT Plaintiff's Motion to Dismiss [the Railroad] Defendants' Counterclaim (Doc. No. 154) IN PART, and dismiss the Railroad's first counterclaim in its entirety and the second counterclaim to the extent of its request for declaratory relief under CERCLA § 113(g), thus retaining that portion of the second counterclaim that is premised on the Declaratory Judgment Act.

## NOTICE

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to

28 U.S.C. 636(b)(1)(B) for which *de novo* review by the district court is sought, together with a supporting memorandum, and request for oral argument before the district judge, if any is sought, within ten (10) days of being served with a copy thereof. A responsive memorandum and any request for oral argument before the district judge shall be filed within ten (10) days after the filing of the objection.

  Failure to file a timely objection shall constitute a waiver of the right to *de novo* review by the district court and to appeal the district court's order.

            /s/ Margaret J. Kravchuk
            U.S. Magistrate Judge

October 8, 2009