UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| FRONTIER COMMUNICATIONS CORPORATION, <br><br> Plaintiff, <br><br> v. <br><br> BARRETT PAVING MATERIALS, INC., *et al.*, <br><br> Defendants. | Civil Action No. 1:07-cv-00113-GZS |

**PLAINTIFF FRONTIER COMMUNICATIONS CORPORATION'S
OPPOSING STATEMENT OF MATERIAL FACTS**

Pursuant to Local Rules 7 and 56(c), Plaintiff Frontier Communications Corporation ("Frontier") respectfully submits this Opposing Statement of Material Facts in response and opposition to Defendant UGI Utilities, Inc. ("UGI")'s Motion for Summary Judgment and Statement of Material Facts.

**OPPOSING STATEMENT**

1. Qualified. Frontier admits that the Bangor MGP operated from approximately 1852 until 1963. The facility was operated under one name, the Bangor Gas Works. Docket No. 152, Recommended Decision on Defendant CenterPoint Energy Resources Corporation's Motion for Summary Judgment ("Rec. Dec.") at 2. The company that owned the Bangor Gas Works facility was known as Bangor Gas Light Company from approximately 1852 until 1941, and as Bangor Gas Company from approximately 1941 until 1948. *Id*. In or about November 1948, Bangor Gas Company was merged into Citizens Utilities Company. *See* Defendant UGI Utilities, Inc.'s Statement of Material Facts ("SMF"), Ex. B.

2. Qualified. Frontier acknowledges that Bangor Gas Company was merged into Citizens Utilities Company in approximately 1948, and that Citizens Utilities Company has been

1

determined to be a predecessor of Citizens Communications Company, now known as Frontier. *See* Rec. Dec. at 20.

3.  Qualified. Frontier alleges that, to the extent any tar was discharged or released from the Bangor Gas Works into the Penobscot River, UGI bears liability for such discharges or releases. Docket No. 1, Complaint ¶ 88.

4.  Admitted.

5.  Qualified. The March 1, 1928 United Gas Improvement Company Management Committee Meeting Minutes state that the capital stock of Bangor Gas Light Company was sold by the American Gas Company to the American Commonwealths Power Corporation in accordance with a contract that was reported to the United Gas Improvement Company Management Committee on January 19, 1928. UGIII0142.[1]

6.  Qualified. Frontier admits that in 1925, the United Gas Improvement Company acquired the stock of the American Gas Company. UGIII0366-68.

7.  Qualified. Frontier admits that SMF Ex. D is a copy of Bangor Gas Light Company by-laws apparently adopted during a May, 1910 meeting of the company's stockholders. SMF Ex. D.

8.  Admitted.

9.  Admitted.

10. Admitted.

---

[1] UGI submitted numerous documents on a CD-ROM in connection with its Motion and Statement of Material Facts. The CD contains documents with the Bates Label prefixes "UGIII," "BGRG" and "F." Rather than submitting these same documents again in connection with its Opposing Statement of Material Facts, Frontier will cite UGI's documents by referencing their Bates number.

11. Qualified. Frontier admits that Bangor Gas Light Company had corporate officers and directors. *See* SMF Ex. I. According to the 1910 by-laws and Public Utilities Commission reports, stockholder meetings would be held every fourth Wednesday of May, and board of director meetings would "be held at such times as the President may think necessary." SMF Ex. I; SMF Ex. D at 2-3.

12. Admitted.

13. Qualified. Frontier admits that Bangor Gas Light Company employed persons in the various jobs listed, and that those employees performed the tasks that would be expected of persons with their job descriptions. The term "day-to-day operations," however, is a term of art with legal import to which no response is required.

14. Admitted.

15. Admitted.

16. Admitted.

17. Admitted.

18. Admitted.

19. Admitted.

20. Admitted.

21. Admitted.

22. Admitted.

23. Admitted.

24. Qualified. Frontier admits that the Bangor Gas Works continued to operate after it was sold to American Commonwealths Power Company in 1928, and after Bangor Gas

Company merged with Citizens Utilities Company in 1963. The remainder of Paragraph 24 contains legal conclusions to which no response is required.

## ADDITIONAL FACTS

1. UGI has admitted for purposes of this motion that American Gas Company ("AGC") is a predecessor of UGI. *See* Docket No. 172, UGI's Motion for Summary Judgment and Incorporated Memorandum of Law at 3 n.8.

2. UGI has admitted that AGC was the principal owner of the capital stock in Bangor Gas Light Company ("BGLC"), which operated the Bangor Gas Works from approximately 1901 through 1928. SMF ¶¶ 1, 4-5.

### A. Facts Material To Direct Operator Liability

3. Corporate records of American Gas & Power Company ("AGP") list Bangor and Bangor Gas Light Company ("BGLC") as one location within AGP's "Gas Division." UGIII0316A-UGIII0334.

4. AGP's corporate records indicate that AGP controlled the budget of BGLC. UGIII0316A-UGII0334.

5. A Maine PUC report notes that between 1901 and 1905, "extensive additions and improvements were made at the gas plant . . . ." F000009.

6. In particular, during the period that it owned the stock of BGLC, AGP "advanced" more than $348,000 to BGLC for "Additions, Extensions and Improvements to property." F002446.

7. The additions, extension and improvements paid for by AGP included:

   a. In 1901, a 400,000 cubic foot gas "Holder," as well as an "Exhauster" and "Scrubbing Apparatus" (which would have been used to clean tar out of the manufactured gas), F002448;

4

b. In 1902, additional "Condensing and Scrubbing Apparatus," F002448;

c. In 1903, an "Ammonia Concentrator and Tank," F002448;

d. In 1910 and 1911, new "Benches and Retorts," which were among the primary pieces of equipment for the manufacture of coal gas, F002448;

e. In 1912, a "Tar and Ammonia Separator," which was the first piece of tar separation equipment known to have been constructed at the Bangor Gas Works, F002448, Case No. 02-cv-0183, Findings of Fact and Conclusions of Law ¶ 48;

f. In 1913 and 1914, additional "Benches and Retorts," F002449;

g. In 1921, the retirement of a "Building over Tar Well," F002449;

8. At least some, if not all, of the extensions, additions and improvements made at the Bangor Gas Works were physically constructed by AGC, including the 400,000 cubic foot gas holder noted above. F002441.

9. Under BGLC's 1910 corporate by-laws, the President of the company, who was throughout AGC's ownership a member of AGC's Board of Directors and a resident of Philadelphia, PA, had discretion to call meetings of the BGLC board of directors as he thought necessary, and was not required to ever call such a meeting. SMF Ex. D at 3; F000032, F000102.

10. Under BGLC's 1910 corporate by-laws, the President of the company, who was throughout AGC's ownership a member of AGC's Board of Directors and a resident of Philadelphia, PA, had "absolute control" over the "practical management" of BGLC between meetings of the board of directors. SMF Ex. D at 3; F000032, F000102.

11. According to the Reports BGLC filed with the Maine PUC, the President of BGLC did not receive a salary from BGLC. *See e.g.*, SMF Ex. I at BGRG0006835, BGRG0007120, BGRG0007159, BGRG0007236.

12. UGI acknowledges that its predecessor entered into an "Agreement for Supervision of Operations" with BGLC on or about January 1, 1927. UGI Mot. at 16; SMF Ex. L.

13. The agreement between UGI's predecessor and BGLC states, among many other things, that UGI's predecessor will study "all equipment, buildings, etc., to secure the best operating efficiencies . . . ." SMF Ex. L at 9.

**B.  Facts Material to Indirect Liability**

14. AGP's management negotiated the purchase of coal that was used by its subsidiary companies, including AGP. UGIII0251B-UGIII0251C; UGIII0265A-UGIII0266.

15. AGP's management monitored the most intricate financial matters of its subsidiaries, including BGLC, to the point that it had records of outstanding BGLC checks in an amount as small as $3.00. UGIII0294A-UGIII0296; UGIII0297-UGIII0298.

16. On a number of occasions, BGLC business was conducted using AGC stationary. UGIII0261C; UGIII0262B; UGIII0304.

17. Cash account reports for AGC and its subsidiaries show that while AGC typically had more than one hundred thousand dollars in cash on hand, BGLC often had less than 1% of that amount in cash available. UGIII0290; UGIII0294A; UGIII0297.

18. In 1901, AGC directed the transfer to AGC of $300,000 in bonds that had been issued by BGLC. F000008.

19. Although the revenue from these bonds was supposed to be spent by AGC to make improvements at the Bangor facility, the Maine PUC concluded that only about $50,000 was ever used for that purpose. F000019.

20. The remainder of the BGLC bonds transferred to AGC was never properly accounted for. F000019-20.

21. Throughout AGC's ownership of BGLC, a majority of BGLC's officers and directors were also officers or directors of AGC. *See, e.g.*, F000009, F000029, F000032, F000043, F000102.

22. After UGI's predecessor, the United Gas Improvement Company, acquired the stock of AGC, a majority of BGLC's officers were also officers of UGI's predecessor. *See, e.g.*, F000112.

23. AGC's officers and directors were not paid by BGLC for their service as officers and directors of that corporation. *See e.g.*, SMF Ex. I at BGRG0006835, BGRG0007120, BGRG0007159, BGRG0007236.

24. Those AGC officers and directors who were also officers and directors of BGLC resided in Philadelphia, PA, or in other locations, rather than in Bangor. *See e.g.*, SMF Ex. I at BGRG0006835, BGRG0007120, BGRG0007159, BGRG0007236.

25. Frontier has propounded discovery to UGI which UGI has not yet answered. Affidavit of Martha Gaythwaite dated December 8, 2009 & Exhibit A

26. Frontier needs discovery from UGI in order to adequately respond to UGI's motion and Statement of Material Facts. *Id.*

27. Frontier has retained an expert in corporate governance, Dr. George Baker, who has reviewed the documents and information available to Frontier concerning UIG's predecessor

and its interactions with Bangor Gas Light Company. Dr. Baker has formed the opinion that UGI's predecessor disregarded the separate corporate identities and exercised extensive control over Bangor Gas Light Company. Affidavit of Martha Gaythwaite dated December 8, 2009 & Exhibit B.

              Respectfully submitted,

Dated: December 8, 2009       <u>/s/ Martha C. Gaythwaite</u>

              Martha C. Gaythwaite
              FRIEDMAN GAYTHWAITE WOLF & LEAVITT
              Six City Center
              P.O. Box 4726
              Portland, ME 04112-4726
              (207) 761-0900

Of Counsel:
John S. Hahn
Jay C. Johnson
MAYER BROWN LLP
1909 K Street, NW
Washington, DC 20006-1101
(202) 263-3000

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on the date shown below, copies of the following document(s):

**PLAINTIFF FRONTIER COMMUNICATIONS CORPORATION'S
OPPOSING STATEMENT OF MATERIAL FACTS**

was electronically filed with the Clerk of Court using the CM/ECF system which will send notification of such filing(s) to the attorney/parties of record who have registered as CM/ECF participants.

Dated: December 8, 2009

                                                Respectfully submitted,

                                                /s/ Martha C. Gaythwaite
                                                Martha C. Gaythwaite
                                                FRIEDMAN GAYTHWAITE WOLF & LEAVITT
                                                Six City Center
                                                P.O. Box 4726
                                                Portland, ME 04112-4726
                                                (207) 761-0900

Of Counsel:

John S. Hahn
Jay C. Johnson
MAYER BROWN LLP
1909 K Street, NW
Washington, DC 20006-1101
(202) 263-3000