UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MAINE

| | |
|---|---|
| FRONTIER COMMUNICATIONS CORPORATION, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) ) Civil Action No. 07-cv-113 |
| BARRETT PAVING MATERIALS, INC., et al., | ) ) ) |
| Defendants. | ) ) |

**DEFENDANT UGI UTILITIES INC.'S REPLY TO FRONTIER COMMUNICATIONS CORPORATION'S OPPOSITION TO UGI'S MOTION FOR SUMMARY JUDGMENT**

I.  Introduction

Frontier's Opposition to UGI's timely filed Motion for Summary Judgment[1] is glaringly deficient in that it fails to point to evidence or facts (as opposed to unsupported assertions and claims) that UGI conducted, managed or directed activities at the site specifically related to the leakage or disposal of waste. In fact, Frontier concedes that, if held to the operator standard that the Court applied in CenterPoint, Frontier cannot produce the requisite proof. (See Opp'n at 6.) Likewise, Frontier points to no facts to show the type of inequity necessary to pierce the veil of Frontier's predecessor, Bangor Gas Light Company ("BGLC"), to reach either American Gas Company of New Jersey ("AGCNJ") or UGI, as was also the case vis-à-vis CenterPoint. Rather, Frontier makes two unpersuasive arguments in its flawed effort to stave off summary judgment. First, Frontier laments the incompleteness of the historical record and states that it "is not the sort of evidence that can serve the as the basis for summary judgment" (Opp'n at 1), even while acknowledging that "no fact witnesses are alive or available to

---

[1] As Federal Rule of Civil Procedure 56 provides, a motion for summary judgment can be filed at any time after 20 days have passed from the commencement of the action and so Frontier' assertion that the Motion is not timely is false. Likewise, Frontier's assertion that UGI has somehow resisted discovery is false as UGI responded to Frontier's Subpoena dated February 23, 2003 and, until the filing of UGI's summary judgment motion, Frontier never complained about such response.

1

testify at trial." (Id.) Second, Frontier argues that it needs additional discovery and that its expert, Dr. Baker, should be able to offer an interpretation of the record. (Id. at 1-2.) Yet Frontier does not show such additional discovery would enable it to better respond to UGI's Motion, nor why Dr. Baker, who already expressed opinions allegedly supporting Frontier's claims, needs additional discovery. Accordingly, UGI's Motion is ripe for decision now and should be granted.

II.     Plaintiffs' Request for Discovery Does Not Satisfy the Standards of Rule 56(f).

UGI produced the documents in its in possession relating to BGLC or the Bangor MGP in 2004.[2] While the historical record may not be as complete as Frontier desires, the absence of fact witnesses alive or available to testify at trial means that the facts can only be gleaned from the existing documents. Frontier is understandably concerned that the documents fail to support Frontier's claims, but that does not overcome summary judgment.

Under Federal Rule of Civil Procedure 56(f), a party opposing summary judgment must provide an affidavit demonstrating:

1.  that good cause exists for the inability to have discovered or marshaled the facts necessary to oppose summary judgment;

2.  that a plausible basis for believing that additional facts probably exist and can be retrieved within a reasonable time; and

3.  an explanation of how those facts, if collected, will suffice to defeat the pending summary judgment motion.

Rivera-Torres v. Rey-Hernandez, 502 F.3d 7, 10 (1st Cir. 2007). Where, as here, an affidavit is vague and/or where further discovery would not alleviate the deficiencies in the cause of action, the request for additional discovery should be denied. CenTra, Inc. et al. *v.* Estrin et al., 538 F.3d 402, 420, 421 (6th

---

[2] After UGI filed its Motion for Summary Judgment on November 5, 2009, Frontier issued discovery requests and interrogatories dated November 25, 2009. In conducting a review, UGI discovered some additional documents, which were inadvertently omitted from UGI's earlier production. While not relevant to the central issues before the Court on summary judgment, these documents refer to BGLC or the Bangor MGP. UGI is producing all of these documents to Frontier, and also is responding to Frontier's discovery requests.

2

Cir. 2008). The Gaythwaite affidavit provided by Frontier (Document 183-1, hereinafter "Aff.") simply does not satisfy the standard set forth above. It focuses on two areas for additional discovery but neither meets the requisite Rule 56(f) standards.

First, Frontier seeks information concerning an "apparent" 1901 BGLC mortgage involving the Portland Trust Company. (Aff. ¶ 3). Yet, even assuming such mortgage has any relevance, UGI possesses no documents relating to it other than those that have been produced. In fact, the available information about this mortgage reveals that the mortgage was executed by BGLC's President with the Portland Trust Company to secure bonds issued by BGLC as authorized by its shareholders and directors. (See F00008). UGI has no additional responsive documents and so the affidavit does not provide a basis under Rule 56 for the Court to delay ruling on Summary Judgment. There is no plausible argument that additional facts regarding the mortgage exist or would bear on the summary judgment motion.

Second, Frontier seeks discovery concerning other UGI MGP litigation which Frontier says it "needs in order to respond to the factual assertions made by UGI concerning these other MGP facilities." (Aff. ¶ 4.) Yet UGI's Statement of Facts supporting its Motion does not rely on a single fact from another MGP case. Rather, UGI has cited only *case law* in which it has been awarded summary judgment on similar claims because application of the principles set forth in the governing case, United States v. Bestfoods, 524 U.S. 51 (1998), to similar CERCLA claims may be helpful to the Court. For example, other courts have been unimpressed by arguments that CERCLA liability should be imposed upon UGI based on the conduct of dual officers or the exercise of normal parental control such as supervision of budget matters and group purchasing of materials.[3] Discovery regarding those cases is plainly unnecessary and improper and would not generate facts that relate to Bangor.

---

[3] UGI understands that Frontier has called to the Court's attention a recent case which did not involve UGI. Rochester Gas & Electric Corp. v. GPU, Inc., No. 09-0482-cv, 2009 WL 4673916 (2nd Cir. Dec. 10, 2009) (affirming Rochester Gas v. GPU, No. 00-CV-6369, slip op. at ¶¶ 10 and 25 (W.D.N.Y. Aug. 8, 2008)); (See Frontier letter dated December 18, 2009, Document #187, 187-1). Frontier's reliance on this case is of no avail. First, CERCLA liability

3

Accordingly, Frontier's request that Dr. Baker review the discovery likewise fails to comport with Rule 56(f). Moreover, the general notion advanced by Frontier that Dr. Baker could be helpful to this Court in interpreting historical corporate documents is flawed.[4] The existing documents require no expert interpretation. This Court has already proved itself perfectly capable of interpreting these documents in its decision on CenterPoint's Motion for Summary Judgment. Moreover, if Dr. Baker had anything to say about these documents or the facts in issue, there was nothing precluding him or Frontier from citing to such in support of Frontier's claims. In fact, as the court found with CenterPoint, Frontier has failed to provide facts to refute UGI's position that it was not conducting activities specifically related to contamination in the Penobscot River (the liability for which this Court has already ascribed to BGLC, which merged with Frontier) or to justify piercing BGLC's corporate veil.

---

must be decided upon the facts of the relationship between the specific parent and subsidiary at issue. What the parent in Rochester may have done with respect to its subsidiary is irrelevant here. Second, the legal precedents for deciding the case at hand are clear. The First Circuit will strictly follow Bestfoods in requiring, *inter alia,* for direct operator liability, evidence of an "agent of the parent alone directing operations specifically related to leaking or disposal of hazardous waste". Bestfoods at 71. Additionally, this Court has recognized that to justify piercing the veil, there must be evidence of injustice or inequity caused by the corporate abuse of which the plaintiff complains. See Recommended Decision of Magistrate Kravchuk on CenterPoint's Mot. for Summ. J. (Doc. No. 152) at 20. As the Court found with CenterPoint, no such injustice or causal nexus exists here. Third, the Rochester case arises from a background of extreme abuse by the parent corporation which both SEC and FTC documented in contemporaneous investigations and reports. Thus, in Rochester, a successor to a former parent corporation, AGECO, was held liable for the operations of plaintiff's corporate predecessor, RGE, only during a discrete four year period, based on evidence that–during this period–AGECO's controlling shareholders plundered AGECO's subsidiaries, including RGE, for personal gain. Subsidiary dividends and a flat percentage of RGE's non-dividend income were upstreamed to AGECO. See Rochester, No. 00-CV-6369, at ¶¶ 10 and 25. AGECO required its subsidiaries to outsource supervision of facility operations to "service companies" personally controlled by AGECO's dominant shareholders or their family members. Id. at ¶¶ 25-27, 30 and 32. AGECO's siphoning caused RGE's credit to become so impaired that lenders required RGE's operations to be taken from AGECO and placed into local control. Id. at ¶ 43. The court found the requirement that plaintiff's harm have a general nexus to the wrongful conduct in the combination of AGECO's plundering, and in imposing the service contracts that required RGE to broadly outsource responsibility for its polluting facilities. See id. at ¶¶ 16-17. No such extreme facts exist here.

[4] The sole case which Frontier claims support its position that expert testimony would be helpful is inapposite because it does not deal with the interpretation of historical corporate documents. Langboard v. U.S. Department of Treasury, No. 06-CV-05315, 2009 WL1312576 (E.D. Pa. May 7, 2009).Compare Yankee Gas Services Company v. UGI Utilities, Inc. 616 F.Supp 2d 228,, 232 (D.Conn 2009) (although court did not strike expert testimony regarding historical records, the Court, with one exception not applicable here, stated that the expert testimony was not of assistance to the Court because the "Court was just as able as the experts to review the historical record and apply the *Bestfoods* standard to the facts as the Court found them.")

III. <u>Frontier's response fails to set forth any genuine issues of material facts that would prevent the Court from granting summary judgment to UGI on both owner and operator liability claims.</u>

    1. There is no evidence that UGI is directly liable as an operator under <u>Bestfoods.</u>

Frontier literally admits that it does not have facts to establish operator liability under <u>Bestfoods</u> as correctly interpreted by this Court. Thus, rather than show that American Gas managed, directed or conducted activities at the facility, "specifically related to pollution - that is operations having to do with the leakage or disposal of hazardous waste or decisions about compliance with environmental regulations," <u>Bestfoods</u>, 524 U.S. at 66-67, Frontier criticizes this Court's interpretation of <u>Bestfoods</u>. (Opp'n at 6.) Frontier claims that this Court "set the bar too high" (<u>id</u>.) in awarding summary judgment to CenterPoint because Frontier could not show that the Defendant "was exercising control over environmental policy, attempting to resolve a direct pollution problem, or directing a release of hazardous waste." (<u>Id</u>., quoting Recommended Decision on Defendant CenterPoint's motion for summary judgment (Docket No. 152) at 14). Yet, this is a correct application of <u>Bestfoods</u>' requirement and Frontier admits that its evidence here cannot satisfy it, just as with CenterPoint's motion.

More to the point, regardless of where the bar is set, it is obvious that Frontier cannot meet it; Frontier has no evidence that UGI or its predecessors directed the discharge of contaminated waste into the sewer that drained into the Penobscot River or otherwise was involved in operations specifically related to the leakage or disposal of hazardous waste. Rather, Frontier resorts to the same discredited claims that AGCNJ controlled the MGP and all its decisions because BGLC's president, who allegedly had absolute control over the plant, was also a director of American Gas (Opp'n at 2) or that UGI entered into a consulting contract with BGLC (<u>id</u>. at 7) pursuant to which it was to study, advise and make recommendations to BGLC's Board about a variety of matters. <u>Bestfoods</u> makes clear that the existence of dual officers and directors is normal and that their exercise of control (much less advice) on non-pollution activities cannot be used as a basis for liability. <u>See</u> UGI's Mot. for Summ. J. (Doc. No. 172), passim.

5

Since all the documents regarding BGLC and the Bangor MGP are available to Frontier, and Frontier has adduced no evidence of direct operation of the facility by UGI (as opposed to operation of the subsidiary), Frontier cannot make the required showing under Bestfoods. See 524 U.S. at 67-68. Recognizing this lack of evidence, Frontier attempts to save its case though reliance on "circumstantial evidence," arguing that UGI "must have been involved" in these kinds of decisions because the officers of BGLC were also officers of UGI. This approach was rejected by Bestfoods and by this Court in analyzing CenterPoint's Motion for Summary Judgment. To the contrary, Bestfoods established that where dual officers acted, their action would be attributed to the subsidiary unless that presumption could be overcome. Id. at 70 n.13. Absent that, Bestfoods demands that Frontier produce evidence that an employee of UGI, "with no hat to wear except that of the parent," was involved in managing the leakage or disposal of waste or that American Gas or UGI conduct transgressed parental norms and specifically related to pollution. Id at 71. As is plain from its Opposition, Frontier has no such evidence. Frontier's obligation at this stage is to present some "significant probative evidence" tending to support its complaint. Anderson v. Liberty lobby, Inc., 477 U.S. 242, 248, 249 (1986). Instead of presenting such evidence, Frontier tries to create a genuine issue of material fact through what at best is what the First Circuit has previously ruled an impermissible tactic of "mere speculation" or "the building of one inference upon another." Mack v. Great Atlantic Pacific Tea Company, 871 F.2d 179, 181 (1st Cir. 1989).

IV. There is no evidence that UGI is indirectly liability for contamination under piercing the corporate veil law.

It is remarkable that Frontier makes the statement that "basic veil piercing rule in Maine is relatively simply and easily satisfied. (Opp'n at 8). Both the Supreme Court in Bestfoods and the Maine Supreme Court have repeatedly emphasized that this is a difficult standard that requires unusual circumstances, including inequity caused by abuse of the corporate form. Frontier does not come close to meeting this standard. The Magistrate rightly concluded in CenterPoint that regardless of the analysis of the twelve factors under Maine law, there was no evidence that it would be unjust for BGLC's

environmental liability to remain with Frontier because it chose to merge with BGLC/BGC.  Frontier, in connection with its piercing claim, claims in its responding brief that "BGLC was chronically undercapitalized, because most of its profits were extracted by its parent company," citing to its OSMF ¶ 17-20.  It is important to note that Frontier does not present this in its opposing statement of fact and the statement is not supported by documents.  Even it true, it would not provide a basis for Frontier to avoid summary judgment.  The annual review of BGLC's finances by the Maine PUC confirms that BGLC was operated to the regulator's satisfaction during the period 1915 to 1928.  Frontier also attempts to raise questions about the degree of control exercised by AGCNJ and the "possibility" that $250,000 in funds provided to American Gas for improvements was not properly accounted for in 1901.[5]  It is noteworthy that, despite the existence of these allegations, Frontier chose to merge with BGLC/BGC in 1949.  Frontier has adduced no facts to show how any possible injustice, fraud or harm that might be inferred from such speculative claims could have proximately caused the injury here—the need to cleanup the Penobscot River.  Here, as with CenterPoint, the Court simply has no evidence before it which would support the other prong of the "piercing" requirement, i.e. that there was a causal nexus between injustice or inequitable consequences from UGI's alleged domination of BGLC and Frontier's environmental liability.

V.      Conclusion.

Frontier fails to show that further discovery would allow it to claim that a material factual dispute exists on the issue of corporate injustice with a causal nexus to environmental liability.  Thus, Frontier's Rule 56(e) argument is simply wrong and unsupported.  Frontier's argument provides no basis for this Court to delay moving forward to grant UGI's Motion for Summary Judgment.

---

[5] Frontier again resorts speculation and innuendo to elevate to the status of "fact" certain questions raised in a 1940 preliminary report by a Mr. Little to the Maine PUC.  The report was written 12 years after AGCNJ sold its stock in BGLC at a time when, according to the report, many of the documents which might have clarified these questions were missing.

Dated: December 22, 2009

Respectfully submitted,

**UGI Utilities, Inc.**

By Its Attorneys,

*s/ Christopher D. Hawkins, Esquire*
E. Tupper Kinder, Esquire
Christopher D. Hawkins, Esquire
(#004047)
NELSON, KINDER, MOSSEAU & SATURLEY, PC
99 Middle Street
Manchester, New Hampshire 03101
(603) 647-1800

s/ Jay N. Varon, Esq.
Foley & Lardner LLP
3000 K Street, N.W., Suite 500
Washington, D.C. 20007
(202) 672-5300
jvaron@foley.com

## CERTIFICATE OF SERVICE

I hereby certify that on December 22, 2009 a true copy of the foregoing **UGI Utilities Inc.'s Reply to Frontier's Opposition to UGI's Motion for Summary Judgment** was sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

_____s/ Christopher D. Hawkins_____
Christopher D. Hawkins, Esquire